Case 2:25-cv-00087-SAB    ECF No. 29    filed 12/16/25    PageID.523    Page 1 of 11

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 16, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EVALYN LEWIS,<br><br>    Plaintiff,<br><br>    v.<br><br>PAUL LAURENCE LAW PLLC, and PAUL CALABRO,<br><br>    Defendants. | No. 2:25-CV-00087-SAB<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART** |

Before the Court is Defendants' Motion for Partial Summary Judgment, ECF No. 15. Plaintiff is represented by Gregory W. Albert. Defendants are represented by Jeffrey T. Kestle. The motion was considered without oral argument.

### Background

Defendant Paul Calabro (Defendant) is the owner of Paul Lawrence Law, PLLC. Plaintiff hired Defendant in connection with the potential recovery of assets from Plaintiff's late brother's estate and/or trust. Fourteen months after the representation ended, Plaintiff filed an action against Defendant in the Spokane County Superior Court to resolve an alleged attorney's lien and Defendant filed compulsory counterclaims for specific performance and breach of contract. The court rejected Plaintiff's petition as Defendant never asserted or filed a lien, and it later dismissed Defendant's counterclaims on summary judgment. Plaintiff then

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART * 1

filed this lawsuit.

Defendant has moved for summary judgment on certain claims, asserting that Plaintiff fails to allege sufficient facts for those claims. The claims at issue are legal malpractice and breach of fiduciary duties claims related to Defendant's conduct after August 12, 2022, malicious prosecution, abuse of process, elder abuse, and outrage. Plaintiff has agreed to dismiss her claim of malicious prosecution.

## Motion Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant

is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### Factual Allegations

In 2011, Plaintiff's mother passed away, leaving a trust which left a large house in California to Plaintiff's brother. Shortly after her mother's passing, Plaintiff hired Defendant to review her mother's trust document. Defendant charged a flat fee of $500 for those services and told Plaintiff to call him when her brother passed away so they could discuss her inheritance of the house. In 2022, Plaintiff's brother passed away, leaving a trust which assigned the residue of the trust in equal shares to Plaintiff and her sister. Plaintiff contacted Defendant about her brother's passing, and the following day, Defendant arrived at Plaintiff's home, unannounced, with a contingency fee agreement.

The fee agreement stated Defendant typically charges an hourly rate of $350.00. However, it also included language referring to a contingency fee arrangement where Plaintiff would pay Defendant one-third of the gross amount recovered from the trust/estate. The agreement indicated whichever amount was greater between the hourly or contingent fees would be what was owed.

Plaintiff asserts she did not understand that the agreement would allow for Defendant to receive a percentage of her inheritance and she trusted Defendant as he had worked for her previously and she assumed he would be fair and honest with her. Plaintiff signed the fee agreement. Soon after, Defendant allegedly began harassing Plaintiff's family with phone calls and letters, leaving long voicemail messages, asserting the trustee of her brother's trust was not actually the trustee, demanding production of trust documents, and telling Plaintiff that her family was taking advantage of her. On August 1, 2022, Defendant received the trust document, which entitled Plaintiff to nearly half the estate, including a house worth approximately $2 million.

On August 12, 2022, Defendant arrived at Plaintiff's house unannounced

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART ~ 3

and asked her to sign a document without explaining its contents. The document authorized Defendant to receive all of Plaintiff's trust distributions to his trust account before distribution to her.

On August 15, 2022, Defendant sent a letter to the firm responsible for administration of the trust, requesting Plaintiff's money be deposited directly into his trust account. On April 17, 2023, Defendant emailed Plaintiff indicating that the house in the trust had been sold, and he would like to talk with her about the distribution. On May 25, 2023, Plaintiff sent a letter to Defendant explicitly requesting documentation of his billable hours. On June 6, 2023, Defendant responded, telling Plaintiff that her family members who were advising her not to pay him a contingency fee were committing "crimes against the elderly" and repeatedly invoked his role as a trusted advisor. He further highlighted the stress she would endure by having to litigate against him.

Plaintiff later contacted Defendant and informed him she had not received a disbursement from the trust yet. Defendant responded on June 14, 2023, telling her to trust him and to not worry about the fees. On July 27, 2023, Plaintiff again contacted Defendant to get documentation of his billable hours. Defendant wrote back, telling Plaintiff to "stop worrying about how much you owe me and just send me the documents for my file… Trust me Evy, I am in no rush to force you to Court on this matter right now." Defendant allegedly threatened to spend "many months and years" burdening her with his claims.

Without an independent understanding of the law, Plaintiff asserts she thought Defendant still represented her as an attorney and she did not know how to terminate an attorney-client relationship nor that she had the power to do so. Defendant now asserts the attorney-client relationship was severed verbally by Plaintiff on August 12, 2022, as she decided she no longer needed his services as the trust was not contestable.

Under the impression that Defendant would seek to put a lien on her

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART \* 4**

inheritance, Plaintiff sequestered her distribution. On October 31, 2023, she filed a petition in Washington State Superior Court for Spokane County to resolve Defendant's fees through an RCW 60.40.030 summary proceeding. Defendant responded with counterclaims. Plaintiff claims Defendant complicated proceedings further by violating procedural rules, filing frivolous motions, scheduling and cancelling hearings without informing Plaintiff's counsel, and falsely claiming he was unavailable for hearings for months at a time. The court ultimately determined Defendant was not entitled to a contingency fee related to Plaintiff's trust distribution and reduced his fee to quantum meruit. The claim for quantum meruit was eventually dismissed as Defendant failed to provide any documentation from which billable hours could be discerned.

At that point, Plaintiff and her counsel moved for sanctions with the court and disciplinary action with the Washington State Bar Association. Neither the court in the underlying case nor the Office of Disciplinary Counsel and Disciplinary Board Review Committee found Defendant's behavior to warrant imposition of sanctions or other penalties.

Plaintiff brought this action in the Eastern District of Washington, asserting six causes of action: (1) Legal Malpractice (Negligence); (2) Breach of Fiduciary Duty; (3) Malicious Prosecution; (4) Abuse of Process; (5) Elder Abuse; and (6) Intentional Infliction of Emotional Distress. She asserts the Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

Plaintiff asserts she has suffered emotional distress over these events and has suffered monetary damages due to paying for underlying adjudication which was dragged on by Defendant's actions.

## Legal Framework

### 1. Legal Malpractice and Breach of Fiduciary Duty

To establish a claim for legal malpractice, a plaintiff must prove: (1) the existence of an attorney-client relationship which gives rise to a duty of care on the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART * 5

part of the attorney to the client; (2) an act or omission by the attorney in breach of the duty of care; (3) damages to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred. *Hizey v. Carpenter*, 119 Wash.2d 251, 260-61 (1992).

Summary judgment on the existence of an attorney-client relationship is only proper "if reasonable minds could reach but one conclusion on it." *Bohn v. Cody*, 119 Wash.2d 357, 363 (1992). The "essence" is "whether the attorney's advice or assistance is sought and received on legal matters." *Id*. An attorney-client relationship, "need not be formalized in a written contract" but rather "may be implied from the parties' conduct." *Id*. While the existence of the relationship can turn on the client's subjective belief, the subjective belief does not control the issue unless it "is reasonably formed based on the attending circumstances, including the attorney's words or actions." *Dietz v. Doe*, 131 Wash.2d 835, 843 (1997).

An attorney's duty of care to their client requires them to exercise a "degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law" in the relevant jurisdiction. *Cook, Flanagan and Berst v. Clausing*, 73 Wash.2d 393, 395 (1968).

In legal malpractice actions, courts are hesitant to award damages based purely on emotional distress. *Schmidt v. Coogan*, 181 Wash.2d 661, 671 (2014). However, when the attorney's conduct is particularly egregious or significant emotional distress is foreseeable from the sensitive nature of the representation, plaintiffs can recover for pure emotional distress. *Id*. It is necessary for a plaintiff's damages to be reasonably within the scope of foreseeable harm given the circumstances. *Id*.

2. **Abuse of Process**

Abuse of process occurs when an individual uses the judicial system's process to achieve inappropriate ends rather than what the process is intended to achieve. *Gem Trading Co. v. Cudahy Corp.*, 92 Wash.2d 956, 963 n.2 (1979). The

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART \* 6**

essential elements of abuse of process are (1) the existence of an ulterior purpose to accomplish an object not within the proper scope of the process, and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings. *Batten v. Abrams*, 28 Wash.App. 737, 745 (1981). The use of a process that is not proper "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself." *Id*. Additionally, the ulterior motive "may be inferred from what is said or done about the process." *Id*.

### 3. Elder Abuse

Under Wash. Rev. Code § 74.34.200, a vulnerable adult has a "cause of action for damages" when the vulnerable adult has been subject to "abuse" and "financial exploitation," while residing in a facility or residing at home who receives care from "a home health" agency, a "home care agency," or an "individual provider." Wash. Rev. Code § 74.34.200 (1). The language of the statute specifically states "[t]his action shall be available where the defendant is or was a corporation, trust, unincorporated association, partnership, administrator, employee, agent, officer, partner, or director *of a facility, or of a home health, hospice, or home care agency licensed or required to be licensed under chapter 70.127 RCW… or an individual provider*." *Id*. (emphasis added). This cause of action is limited to a specific category of defendants and is intended to be available for plaintiffs who experience abuse while being cared for by the individual or entity licensed to provide said care. *Turner v. Washington State Dep't of Soc. & Health Servs.*, 198 Wash.2d 273, 301 (2021).

### 4. Tort of Outrage/Intentional Infliction of Emotional Distress

To prevail on a claim for the tort of outrage, a plaintiff must prove the following: (1) that the defendant engaged in extreme and outrageous conduct, (2) the defendant intentionally or recklessly inflicted emotional distress on the plaintiff, and (3) the conduct actually resulted in severe emotional distress to the plaintiff. *Kleopfel v. Bokor*, 149 Wash.2d 192, 195-96 (2003).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART \* 7**

**Defendant's Motion for Partial Summary Judgment**

Defendant argues the Court should dismiss Plaintiff's legal malpractice and breach of fiduciary duty claims for behavior after August 12, 2022, as Plaintiff allegedly terminated the attorney-client relationship on that date.

He asserts there is no evidence to show that he had an ulterior purpose regarding his choices and actions nor that he engaged in improper acts during the underlying litigation to support Plaintiff's claim for abuse of process.

Defendant argues Plaintiff lacks standing to bring a claim for elder abuse, as the underlying statute requires a claimant to either reside in an adult care facility or receive at-home care. Further, Defendant is not a party against which a claim under this provision can be maintained, as Defendant is not an "individual provider" nor is he licensed or required to be licensed within the meaning of the provision. Wash. Rev. Code § 74.34.020(10), 70.127.

Finally, Defendant argues Plaintiff's claims for outrage/intentional infliction of emotional distress should be dismissed as neither the court in the underlying case nor the Office of Disciplinary Counsel and Disciplinary Board Review Committee concluded that Defendants' conduct warranted sanctions or other penalties. Further, Defendant asserts there is no evidence that Plaintiff suffered severe emotional distress because of Defendants' conduct.

**Analysis**

**1. Plaintiff's Legal Malpractice and Breach of Fiduciary Duty Claims**

    **a. Existence of an attorney-client relationship**

Defendant continued to contact Plaintiff and other relevant parties after August 12, 2022, regarding disbursements from the trust account and other matters related to the representation. Plaintiff asserts she believed the relationship continued to exist past this date, as she did not know how to sever the relationship, nor that she had the power to do so. Plaintiff's subjective belief cannot be the only assertion relied upon. However, Defendant continued to contact Plaintiff,

providing advice and instruction regarding the trust disbursements after August 12, 2022. As such, a reasonable jury could find that an attorney-client relationship could have existed past that date.

### b. Breach of duty of care

Defendant threatened to drag Plaintiff through litigation on several occasions after August 12, 2022, and repeatedly told Plaintiff to trust him rather than addressing her concerns. As such, a reasonable jury could find that these actions amount to a breach of the typical standard of care for attorneys in this jurisdiction.

### c. Damages

Given Defendant's conduct within the relevant timeframe, Plaintiff's age and physical condition, and the position of trust and authority that Defendant held, it is possible that a factfinder could determine that Plaintiff is entitled to damages for emotional distress.

### d. Proximate causation between breach of duty and damages

Defendant harassed Plaintiff's family members, repeatedly threatened to take Plaintiff to court, failed to address Plaintiff's concerns. As a result, Plaintiff alleges that she has experienced extreme distress. As such, a reasonable jury could find that a causal connection can be drawn between Plaintiff's emotional distress and Defendant's conduct.

### e. Conclusion

Based on the record before the court, a reasonable jury could find for Plaintiff on her claims of legal malpractice and breach of fiduciary duty after August 12, 2022. As such, Defendant's request for summary judgment as to this claim is denied.

## 2. Plaintiff's Abuse of Process Claim

Defendant told Plaintiff he would drag her through "many months and years" of litigation, repeatedly stating she had no chance of prevailing against him and engaged in behavior during litigation that Plaintiff asserts had no purpose other

than to delay and frustrate.

Although Plaintiff initiated the underlying summary adjudication and Defendant's filing of his counterclaims was compulsory, a reasonable jury could find that Defendant's actions throughout that process were undertaken to disrupt the legal process, drag out litigation, and cause undue delay and frustration. As such, Defendant's request for summary judgment as to this claim is denied.

### 3. Plaintiff's Elder Abuse Claim

Defendant is not a care provider within the context of the statute. As such, Plaintiff cannot recover against Defendant under this specific cause of action, and Defendant's motion for summary judgment as to this claim is granted.

### 4. Plaintiff's Outrage Claim

Defendant cites no authority which limits this Court's discretion to determine whether conduct is sufficiently outrageous to justify relief under this claim. Neither the decision of the court in the underlying adjudication nor the determination of the Washington State Bar Association are determinative here. Instead, a reasonable jury could determine that Defendant's conduct was outrageous enough to justify recovery. As such, Defendant's request for summary judgment as to this claim is denied.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Partial Summary Judgment, ECF No. 15, is **GRANTED in part**.

    a.    Plaintiff's Elder Abuse claim is **DISMISSED**.

    b.    Pursuant to Plaintiff's stipulation, Plaintiff's Claim of Malicious Prosecution is **DISMISSED**.

//
//
//
//

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART \* 10**

  c. Defendant's Motion for Summary Judgment as to all other claims is **DENIED**.

 **IT IS SO ORDERED**. The District Court Clerk is hereby directed to file this Order and provide copies to counsel.

 **DATED** this 16th day of December 2025.

*[Signature: Stan Bastian]*

Stan Bastian
Chief United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART** * 11